**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DYLAN LEE DUNN,<br>          *Plaintiff-Appellee,*<br>v.<br>J. CASTRO; T. SURGES;<br>P. STOCKMAN; D. ORTIZ;<br>Y. YAMAMOTO; A. K. SCRIBNER,<br>          *Defendants-Appellants.* | No. 08-15957<br>D.C. No.<br>1:06-CV-00088-<br>AWI-DLB<br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Submitted July 16, 2010*
San Francisco, California

Filed September 14, 2010

Before: Procter Hug, Jr., and Milan D. Smith, Jr.,
Circuit Judges, and James D. Todd, Senior District Judge.**

Opinion by Judge Milan D. Smith, Jr.

---

   *This case was submitted for decision on the briefs and record without oral argument. Fed. R. App. P. 34(a)(2).

   **The Honorable James D. Todd, Senior United States District Judge for the Western District of Tennessee, sitting by designation.

14077

## COUNSEL

Edmund G. Brown, Jr., Attorney General of California; Rochelle C. East, Senior Assistant Attorney General; David A. Carrasco, Supervising Deputy Attorney General; and Vickey P. Whitney, Supervising Deputy Attorney General, Sacramento, California, for the defendants-appellants.

Dylan Lee Dunn, Delano, California, pro se.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellee Dylan Dunn, a California state prisoner acting pro se, filed this action under 42 U.S.C. § 1983 against Defendants-Appellants J. Castro, T. Surges, P. Stockman, D. Ortiz, Y. Yamamoto, and A.K. Scribner (collectively, Defendants). Dunn challenges a restriction that was temporarily imposed on his right to receive visits from his three minor children while he was in prison. Defendants appeal from the district court's order denying their motion to dismiss Dunn's complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## BACKGROUND

Dunn is a California state prisoner. On May 7, 2002, while incarcerated at Corcoran State Prison, prison officials reported Dunn for violating prison rules by "attempting to elicit illegal sexual relations by phone in concert [with a] minor." Dunn claims that he was actually engaging in a sexually-oriented telephone conversation with his wife, without realizing at the time that his child was on the phone. Nevertheless, on January 29, 2004, an Institutional Classification Committee (ICC) decided to prohibit Dunn from receiving visits from all minors, based upon the May 2002 violation.

The ICC relied upon California Code of Regulations (CCR), title 15, section 3173.1, in making its decision.[1] Section 3173.1 provides that "[i]nmates may be prohibited from having contact or non-contact visits where substantial evidence . . . of the misconduct described in section 3177(b)(1)

---

[1] This version of section 3173.1 became operative on March 20, 2003. A repealer, new section, and amendment were filed on December 5, 2005. The parties agree that the 2003 version quoted above was in effect at the time of the ICC's decision, and controls in this case.

exists, with or without a criminal conviction." Section 3177(b)(1), in turn, lists several California Penal Code sections dealing with sex offenses, including California Penal Code section 266j. Penal Code section 266j criminalizes the act of causing, inducing, or persuading a child under the age of 16 to engage in "any lewd or lascivious act" with another person.

Dunn sought relief from the restriction through the prison administrative grievance system. On February 18, 2005, prison officials lifted the restriction on Dunn's visitation privileges, of which Dunn received notice on July 28, 2005.

Dunn, proceeding pro se and in forma pauperis, later filed a complaint against Defendants under 42 U.S.C. § 1983. In his complaint, Dunn pleaded five claims, alleging that Defendants violated his right to: (1) substantive due process under the Fourteenth Amendment; (2) freedom of association under the First Amendment; (3) freedom from cruel and unusual punishment under the Eighth Amendment; (4) equal protection under the Fourteenth Amendment; and (5) a state-created liberty interest under the Fourteenth Amendment. After screening the complaint pursuant to 28 U.S.C. § 1915A(a), the district court permitted the complaint to proceed as to the due process claims. Defendants then filed a Rule 12(b)(6) motion to dismiss the remaining claims on the ground of qualified immunity.

Defendants' motion to dismiss was first heard by a magistrate judge. Applying the two-prong test for qualified immunity announced in *Saucier v. Katz,* 533 U.S. 194 (2001), the magistrate judge found that (1) Dunn had adequately alleged a violation of the "fundamental liberty interest in his relationship with his children" that was clearly established at the time of Defendants' challenged conduct, and (2) that he could not reach a decision as to the reasonableness of Defendants' conduct because it was a fact-based inquiry that was improper for disposition on a motion to dismiss. As a result, the magistrate

judge recommended that Defendants' motion be denied. The district court subsequently adopted the magistrate judge's findings and recommendation in full and denied the motion to dismiss. Defendants promptly appealed the district court's order.

## STANDARD OF REVIEW

We review de novo a district court's decision to deny a motion to dismiss under Rule 12(b)(6). *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005). On review of a denial of a motion to dismiss based on qualified immunity, we review de novo whether governing law was clearly established at the time of the alleged violation. *See Mabe v. San Bernardino County Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001).

## DISCUSSION

**[1]** The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing whether a government official is entitled to qualified immunity, the court looks at two distinct questions. *See, e.g.*, *Greene v. Camreta*, 588 F.3d 1011, 1021 (9th Cir. 2009) (discussing the "two-step procedure" established in *Saucier*). First, the court determines whether the facts alleged, construed in the light most favorable to the injured party, establish the violation of a constitutional right. *Saucier*, 533 U.S. at 201. Second, the court decides whether the right is clearly established such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted." *Id.* at 202. The Supreme Court recently instructed that we are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 818 (2009). Because (as will be discussed *infra*) Defendants' conduct does not constitute the violation of a clearly established constitutional right of which a reasonable person would have known, the second prong of the *Saucier* analysis is dispositive in this case. *See James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010) ("*Pearson* . . . gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated."). We, therefore, address only the second prong of the qualified immunity analysis.

We find it particularly appropriate to resolve Dunn's case at this stage because the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity confers upon officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.' " *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Moreover, although the first *Saucier* prong calls for a factual inquiry, *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009), the second prong of the *Saucier* analysis is "solely a question of law for the judge," *id. See also Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court."). Therefore, contrary to the district court's ruling, it is proper for us to reach the inquiry into whether the facts as alleged supported a reasonable officer's belief that his conduct was lawful. *See id.* ("The determination of whether the facts alleged could support a reasonable belief in the existence of probable cause or reasonable suspicion is also a question of law to be determined by the court."); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time, so

that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of legal facts." (internal quotation marks omitted)).

**[2]** As to the second prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. To do so, the court must "determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). Therefore, we must consider the state of the clearly established law in 2004, and whether it gave Defendants fair warning that their decision to suspend Dunn's visitation privileges with his children was unconstitutional.

The district court articulated the clearly established constitutional right at issue in this case to be "the fundamental interest a parent has in maintaining a relationship with his child." Our able district court colleague erred in defining the established constitutional right so broadly.

**[3]** A court, when deciding whether there has been a violation of a "clearly established right" for qualified immunity, must strike the proper balance in defining that right. In *Anderson v. Creighton*, the Court stressed the importance of this balance and the adverse consequences of defining the right too generally. 483 U.S. 635, 639-40 (1987). "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right," *id.* at 639. Assuming there is an established fundamental right to a relationship with one's children, the same could be said for any action that violates that fundamental right.

> But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Id.* at 639-40 (internal quotation marks and citation omitted) (alteration in original).

The Court in *Anderson* criticized the court of appeals for considering the qualified immunity question only in terms of the petitioner's "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances," *id.* at 640, rather than considering "the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed," *id.* at 641.

| DUNN v. CASTRO | 14087 |
|---|---|

**[4]** The district court has committed a similar error in the present case. It defined the pertinent right as a broad general proposition, that is, a father's right to the companionship of his child. The cases cited by the magistrate judge and district court may support the basic premise that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" outside of prison.[2] *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). But we stress that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see also Calabretta v. Floyd*, 189 F.3d 808, 812 (9th Cir. 1999) ("The right the official is alleged to have violated must have been 'clearly established' in an appropriately particularized sense."). While an ordinary father may possess a general right to a relationship with his child, *Dunn* is no *ordinary* parent. He is a parent who is lawfully incarcerated. In this case, therefore, the appropriate question is whether a reasonable prison official could have believed that terminating Dunn's right to receive visits from his children was lawful, in light of clearly established law and the information he pos-

---

[2]None of the cases cited by the magistrate judge or district court addresses the extent to which the "fundamental liberty interest" in familial association survives when one is lawfully incarcerated. In *Kelson v. City of Springfield*, the parents sued the city for school officials' negligence in permitting their 14-year old son to commit suicide while at school. 767 F.2d 651, 653-55 (9th Cir. 1985). In *Smith v. City of Fontana*, a detainee's children sued the city for the wrongful death of their father while in police custody. 818 F.2d 1411, 1418-20 (9th Cir. 1987). In *Lee*, a mother sued the city and city officials for the wrongful arrest, extradition, and incarceration of her mentally disabled son, who officials had mistakenly identified as a wanted fugitive. 250 F.3d at 677-80. In *Board of Directors of Rotary International v. Rotary Club of Duarte*, the Rotary Club of Duarte, California, and two of its female members sued Rotary International for its rules prohibiting the admission of female members. 481 U.S. 537, 540-42 (1987). In *Conti v. City of Fremont*, a restaurant owner sued the city for its refusal to amend a zoning use permit that prohibited him from serving alcohol to customers 18 to 20 years old. 919 F.2d 1385, 1386-88 (9th Cir. 1990).

| 14088 | Dunn v. Castro |
|---|---|

sessed. *See James*, 606 F.3d at 652-53 (acknowledging "a parent's right to participate in his child's care, custody, and management is clearly established 'as a broad general proposition,' " but holding that a father did not have a clearly established right to have officials investigating the alleged abuse of his child inform him about the investigation).

**[5]** At the time Defendants imposed the challenged restriction, Supreme Court and Ninth Circuit precedent clearly established that prisoners do not enjoy an absolute right to receive visits while incarcerated, even from family members. In *Block v. Rutherford*, the Court held "that the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility." 468 U.S. 576, 589 (1984).[3] In *Kentucky Department of Corrections v. Thompson*, the Supreme Court held "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." 490 U.S. 454, 461 (1989) (internal citation and quotation marks omitted).

In *Overton v. Bazzetta*, the Court considered a substantive due process claim challenging various prison regulations restricting prisoners' rights to receive visits from family members. 539 U.S. 126, 129-30 (2003). The Court's own hesitation in articulating the existence and nature of an inmate's right to receive visits from family members while in prison is instructive. The Court acknowledged that "*outside the prison context*, there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." *Id*. at 131 (empha-

---

[3]*Block* involved pretrial detainees, but the Court indicated that this group should be treated similarly to convicted inmates in this regard. *See id.* at 587.

Dunn v. Castro    14089

sis added). The Court, however, declined to "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." *Id*. at 132. At the same time, the Court observed that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights *least compatible* with incarceration." *Id*. at 131 (emphasis added). Further, despite how "severe[ly]" the prison regulations at issue in *Overton* restricted the prisoners' right to receive visits from their own family, including minors, *id*. at 134, the Court upheld the constitutionality of the challenged regulations, *id*. at 136-37.

The Court's failure to recognize an absolute right to receive visitors in prison, to a certain extent, necessarily flows from the nature of prison, the goals it serves, and the deference owed to prison administrators in effectuating those goals. Prison serves the important purpose of deterring crime. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses." *Id.*; *see also Rhodes v. Chapman*, 452 U.S. 337, 352 (1981) (identifying the deterrence of future crime among the "goals of the penal function in the criminal justice system"). To that end, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *Pell*, 417 U.S. at 822 (internal quotation marks omitted) (alteration in original), including the right to associate with individuals with whom an inmate would otherwise enjoy close personal and professional relations outside of the prison context. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those

14090   DUNN v. CASTRO

outside of the penal institution."). In *Overton*, the Court reiterated the "substantial deference [courts must accord] to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." 539 U.S. at 132.

We have similarly declined to recognize a prisoner's constitutional right to receive visits, stating that "it is well-settled that prisoners have no constitutional right while incarcerated to contact visits." *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002 ) (en banc); *see also Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of prisoner's claim challenging regulation that denied him visits from persons other than his immediate family); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam) (holding that prisoners do not have a constitutional right to contact visitation privileges); *Toussaint v. McCarthy,* 801 F.2d 1080, 1114 (9th Cir. 1986) ("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society."), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

In determining whether a right is clearly established, we may also look to precedent from other circuits. *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). Other circuits that have addressed the question have also declined to recognize the right Dunn asserts here.[4]

---

[4]*See Samford v. Dretke*, 562 F.3d 674, 682 (5th Cir. 2009) (per curiam) (holding the removal of prisoner's sons from the approved visitors list did not violate his constitutional rights); *Wirsching v. Colorado*, 360 F.3d 1191, 1198-1201 (10th Cir. 2004) (upholding prison regulation that prohibited a prisoner from receiving any visits from his children so long as he refused to participate in a treatment program); *Ware v. Morrison*, 276 F.3d 385, 388 (8th Cir. 2002) (holding that the suspension of a prisoner's visitation privileges with his wife did not violate his due process rights);

**[6]** Two other circumstances are relevant to defining the contours of the constitutional right Dunn asserts in this case. First, Dunn is not challenging the constitutionality of any of the prison's regulations as a matter of law. Instead, he is challenging the specific decision restricting his visitation privileges. We note that Dunn is no longer under a permanent restriction on his right to receive visits from his children. Since July 28, 2005, Dunn has been aware of his entitlement to receive visits from his children. Thus, Dunn is essentially

---

*Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("[T]he Supreme Court has held that inmates have no right to unfettered visitation. Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner[.]" (internal citation omitted)); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir. 1994) ("[I]nmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives."); *Robinson v. Palmer*, 841 F.2d 1151, 1156-57 (D.C. Cir. 1988) (holding that the permanent denial of face-to-face communications between inmate and his wife was not an "exaggerated response" to the perceived threat of visitors introducing drugs into the prison); *Thorne v. Jones*, 765 F.2d 1270, 1273-75 (5th Cir. 1985) (holding prisoner had no absolute right to visits from his parents); *Harmon v. Auger*, 768 F.2d 270, 272 (8th Cir. 1985) (holding that an inmate does not have a liberty interest in contact visits); *Smith v. Coughlin*, 748 F.2d 783, 788-89 (2d Cir. 1984) (upholding prison regulation that prohibited contact visits from family); *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984) (upholding the termination of family visits as a result of prison regulation violations); *Ramos v. Lamm*, 639 F.2d 559, 570 n.26 (10th Cir. 1980) ("[W]e think the weight of present authority clearly establishes that there is no constitutional right to contact visitation. We agree with this view." (internal citations omitted)); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980) (holding that "convicted prisoners have no absolute constitutional right to visitation"); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 758-60 (3d Cir. 1979) (holding that prohibition of contact visits from family members does not violate prisoners' due process rights); *Feeley v. Sampson*, 570 F.2d 364, 372-73 (1st Cir. 1978) ("As for contact visits, we can discover no constitutional guarantee that such visits may take place."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that inmate had no constitutional right to physical contact with his family).

14092                    DUNN v. CASTRO

challenging an 18-month suspension of his visitation privileges.[5] Our conclusion might be different if Dunn were presently subject to a blanket ban on his visitation privileges. *See Overton*, 539 U.S. at 137 ("If the withdrawal of all visitation privileges were permanent or for a much longer period, . . . the case would present different considerations."); *but see id.* at 130, 134 (upholding a prison regulation that prohibited prisoners who had committed multiple substance abuse violations from receiving any visitors except attorneys and clergy members for a period of two years).

**[7]** Second, prisons officials had grounds for concluding that Dunn had violated prison rules when he participated in a sexually-oriented telephone call involving a minor. Dunn alleges that he was merely having phone sex with his wife, without knowing that his child was also on the line, an allegation we must accept as true for purposes of our analysis. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Even accepting Dunn's allegation as true, however, he still concedes the essential facts of the reported misconduct—his participation in a sexually explicit phone call that involved a minor.

**[8]** Further, whether or not based upon 15 CCR section 3173.1, prison officials had a basis for restricting Dunn's visitation privileges. In the Director's Level Appeal Decision, the Inmate Appeal Branch concluded that even though 15 CCR section 3173.1 may not have been the "appropriate vehicle" for imposing the restriction on Dunn's privileges, the restriction "could as easily have been supported by initiating an investigation into a possible conspiracy to circumvent visiting rules using minors, causing the minor's right to visit to be suspended pending the outcome of that investigation."[6] As a

---

[5]Dunn's visitation privileges were actually restored on February 18, 2005. Dunn, however, did not receive notice of the decision lifting the restriction until July 28, 2005.

[6]In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the complaint. *Intri-Plex Technolo-*

DUNN v. CASTRO                                    14093

result, the Inmate Appeals Branch concluded that "[t]he immediate effect would have been the same," and "there [was] no evidence that either the appellant or his family suffered needless harm from the actions of ICC and there [was] evidence that ICC had both reason and obligation to ensure the safety of the minor before allowing future visits to occur." *Id*. Moreover, the possibility of a mistake in originally basing the restriction in section 3173.1, as opposed to some alternative regulation, would not foreclose the qualified immunity defense. "The qualified immunity standard gives ample room for mistaken judgments." *Hunter*, 502 U.S. at 229 (internal quotation marks omitted); *see also Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (stating the purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties"). In sum, the facts alleged in this case do not reveal that the restriction on Dunn's visitation privileges was imposed arbitrarily or irrationally. *See Overton*, 539 U.S. at 137 ("If the

---

*gies, Inc. v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir. 2007). However, there are exceptions to the general rule. Under the "incorporation by reference" doctrine, we may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation marks omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Dunn expressly refers to the July 28, 2005, decision—an administrative decision the authenticity of which neither party contests—throughout his complaint. Further, we note that Dunn has attached a copy of the July 28, 2005, decision as an exhibit to both his memorandum in response to Defendant's motion to dismiss in the district court as well as his response brief before this court. Thus, our consideration of the Director's Level Appeal Decision is appropriate in the context of reviewing Defendants' motion to dismiss.

withdrawal of all visitation privileges . . . were applied in an arbitrary manner to a particular inmate, the case would present different considerations.").

## CONCLUSION

**[9]** The right at issue here is not an abstract right to familial association. By so holding, the district court erred by defining the question at too high a level of generality and evaluating that question without regard to the relevant fact-specific circumstances. Like the Court in *Overton*, we do not hold or imply that incarceration entirely extinguishes the right to receive visits from family members. *See* 539 U.S. at 131-32. Nor do we deprecate the value of the relationship between Dunn and his children. The relationship between a father or mother and his or her child, even in prison, merits some degree of protection. The pertinent inquiry in this case, however, goes beyond an ordinary father's interest in sharing a relationship with his child. It is rather whether a reasonable officer could have believed that Dunn—a lawfully incarcerated prisoner who was reasonably believed to have engaged in improper conduct with a minor—could be temporarily deprived of his visitation privileges with his own children. That constitutional question "is by no means open and shut." *See Wilson*, 526 U.S. at 615. At the time of the challenged restriction on Dunn's visitation privileges, federal courts had held that prisoners do not have an absolute right to visitation, as such privileges are necessarily subject to the prison authorities' discretion, provided their administrative decisions are tied to legitimate penological objectives. Thus, we conclude that the right of a prisoner to receive visits from his children in the factual circumstances of this case was not clearly established in 2004, when the restriction was imposed. Accordingly, we hold that Defendants did not have fair warning that their actions were unconstitutional and that they "could have believed [their] actions lawful at the time they were undertaken." *Friedman v. Boucher*, 580 F.3d 847, 858 (9th

DUNN v. CASTRO    14095

Cir. 2009). As a result, the district court erred in holding Defendants are not entitled to qualified immunity.[7]

**REVERSED and REMANDED to the district court for further proceedings in conformity with this opinion.**

---

[7]Defendants asked the district court to rule in their favor on the basis of the four-factor test articulated in *Turner v. Safley*, 482 U.S. 78 (1987). Both the magistrate judge and district court concluded that the application of the *Turner* factors would be premature at the Rule 12(b)(6) stage. We have previously declined to render a decision on whether a prisoner's rights have been violated under a challenged regulation in the absence of adequate factual findings by the district court on the *Turner* elements. *See Shakur v. Schriro*, 514 F.3d 878, 887-88 (9th Cir. 2008); *Ward v. Walsh*, 1 F.3d 873, 878-79 (9th Cir. 1993). We similarly decline to render any decision on the application of *Turner* to the facts at issue in this case.